UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| In Re:<br>TREASURES & GEMS, LTD.,<br>    Debtor.<br>_____ | Case No.: 24-10570<br>Chapter 11<br>**JOINT AFFIDAVIT OF MICHAEL E.**<br>**CRANE and BENJAMIN NAZMIYAL**<br>**IN OPPOSITION TO CONFIRMATION** |

We, MICHAEL E. CRANE and BENJAMIN NAZMIYAL, being duly sworn, deposes and says the following under penalties of perjury:

We are separate partiesin the above captioned bankruptcy and we are fully familiar with the facts and circumstances of this case. We submit this affidavit in opposition to Debtor's confirmation of the sale.

### **THE SALE SHOULD NOT BE CONFIRMED UNLESS THE LEASES FOR WRISTWATCH CAFÉ AND KOSHER FOOD CONNECTION REMAIN VALID**

1. Similar issue presented here was also decided previously in this court. (See <u>DISHI & SONS, Appellant, v. BAY CONDOS LLC, 11 East 36 Note Buyer LLC, New York Pubs, Inc. d/b/a The Ginger Man, and Munitalp Corp., Appellees</u>, 510 B.R. 696 (S.D.N.Y. 2014).

2. In sum, an Order was entered by the Bankruptcy Court approving sale of estate assets outside the ordinary course of Chapter 11 debtor's business to successful bidder at auction, **finding that debtor's commercial tenant was entitled to continue in possession for remainder of its lease term at rent specified,** and confirming Chapter 11 plan. Successful bidder appealed from that portion of order determining tenant's rights. The decision of the Court was affirmed. **(Attached hereto as Exhibit "A" is the case aforementioned)**

1

3. The key factors in rendering the decision: 1) While commercial lessee, upon rejection of Chapter11 debtor-lessor's lease, could elect to retain its appurtenant rights under lease, this did not mean that such rights were unavoidable; 2) Phrase "applicable nonbankruptcy law," as used in bankruptcy statute authorizing sales free and clear, could not be interpreted broadly to include state mortgage foreclosure law; 3) The Bankruptcy Court did not abuse its discretion in holding that debtor's commercial tenant was entitled to continue in possession to adequately protect its appurtenant rights.

4. The instant bankruptcy case of Treasure & Gems LTD practically mirrors the above case. Wristwatch Café LLC and Kosher Food Connection LLC, also assert their rights to retain possession of their stores located at 250 E 90th Street, New York, NY 10128, for the duration of their leases under 11 USC §365(h), and alternatively, as adequate protection under 11 USC §361(3) and 11 USC §363(e). **(Attached as Exhibit "B" and Exhibit "C" are leases for the two commercial spaces)**

5. In addition, USC 11 §363(f) and §365(h) are not contradictory, but rather should be read harmoniously as addressing distinct issues. Whether there is a rejection triggering §365(h) or not, the lessee may retain its appurtenant rights under the lease, which must be respected in any subsequent action by the trustee, including a free and clear sale. The Bankruptcy Court in the instant case has scheduled its hearing regarding the validity of the leases for the same day as the confirmation of the sale. Therefore, it is impossible to defend any possible findings under USC §363(f). However, at the moment the leases for Wristwatch Café LLC and Kosher Food Connection LLC are in fact valid. None of the 5 prongs of §363(f) have yet to be argued. Even if the Court believes that §363(f) applies, we would then be forced to consider under §365(h).

6. Furthermore, 11 USC §361(3) and 11 USC §363(e) should also be taken into consideration as well. In <u>Dishi</u>, appellant reasonably believed that the sale would not be subject to the TGM lease. It is thus unfair to impose the entire burden of adequate protection upon it. However, nowhere is it required that a bankruptcy court "fairly" allocate the burden of adequate protection. On the contrary, §363(e) is focused on protecting the entity whose interest is threatened, not other creditors or the purchaser. §363(e) directs that the Court "*shall* prohibit or condition such use, sale or lease as necessary to provide adequate protection of such interest," and §361 defines such protection, *inter alia*, as such "relief…as will result in the realization by such entity of the *indubitable equivalent* of such entity's interest." (See 11 USC §361(3), §363(e) (emphasis added)). Absent any authority to the contrary, the Court **MUST** follow the plain language of the code, **which requires the bankruptcy court to provide "adequate protection," which includes the indubitable equivalent of the interest, namely, continued possession**.

7. Finally, if it is improbable that the lessee will receive any compensation for its interest from proceeds of the sale, and it is difficult to value the lessee's unique property interest, other courts similarly concluded that **"adequate protection can be achieved only through continued possession of the leased premises*.*"** In re Haskell 321 B.R.1 (Bankr. D. Mass. 2005, at 10**).**

8. In the Treasures & Gems LTD case before the court, there is clearly no proceeds available to compensate anyone. There is no adequate protection available other than to permit Wristwatch Café LLC and Kosher Food Connection LLC to continue their leases for their prescribed duration and rent. In Dishi (supra), the final decision was that

whether a sale free and clear of the TGM lease was permissible or not, TGM is entitled to continued possession under 11 USC §363(e). Here, if the leases for Wristwatch Café and Kosher Food Connection should be deemed valid, then they too should remain intact as well affording the tenants their current yearly terms and rents.

### SECTION 363(e) DIRECTS THAT THE COURT "*SHALL* PROHIBIT OR CONDITION SUCH USE, SALE OR LEASE AS NECESSARY TO PROVIDE ADEQUATE PROTECTION OF SUCH INTEREST"

9. Assuming the leases are valid for Wristwatch Café and Kosher Food Connection, the Court may need to decide "the adequate protection" warranted for these interests other than the obvious remaining in these spaces for the duration of their leases at the prescribed rent. The investments in these spaces by Benjamin Nazmiyal began in July 2021 and continue until this very day. The Operating Agreements evidence The Wristwatch Café LLC and The Kosher Food Connection LLC at their creation almost 4 years ago, memorializing the ownership strictly between Mr. Nazmiyal and his wife Rachel Greenberg. (Attached as Exhibit "D" and Exhibit "E" are operating agreements for the entities respectively) The combined electric bills in the name of Kosher Food Connection are of similar age evidencing the actual use of the corporate entity. (Attached as Exhibit "F" electric bills). Insurance proposals for both entities dating back from April 2022 as well. (Attached as Exhibit "G" are the insurance proposals).

10. In addition, Mr. Nazmiyal purchased at least $47,000 in refrigeration equipment, appliances, showcases and POS Systems for the 2 stores. (Attached as Exhibit "H" are fixture receipts.) Mr. Nazmiyal spent over $367,553 in renovating the interiors of the stores. (Attached as Exhibit "I" construction receipts).

11. The Debtor would like this Court to believe that this is all a show, just another example of Benjamin Nazmiyal conning the world. However, no one in their right mind invests nearly half a million dollars and 4 years of their life unless they are seriously investing in their financial future by creating vehicles for income. Mr. Nazmiyal signed a valid contract to purchase the building at 250 E 90th Street, New York, NY, paid a $100,000 deposit and began a dream of both him and his wife owning businesses side by side in their income property. (Attached as Exhibit "J" is contract of sale). The Debtor refused to close on the building and was sued by Mr. Nazmiyal for "specific performance". In desperation to kill the sale, the debtor filed bankruptcy petition and now Benjamin Nazmiyal is out of his deposit, the building and possibly his investment in the 2 stores if the Court allows it. Conversely, Mr Nazmiyal may be offered monetary compensation if it qualifies as "adequate protection" under the bankruptcy law. However, most courts decide that **"adequate protection can be achieved only through continued possession of the leased premises."** *In re Haskell 321 B.R. at 10, supra.*

### SECURITY AND RENTS WERE PAID SINCE 2021

12. The Agreements with Wristwatch Café and Kosher Food Connection provided for rent concessions during construction of the stores. The world began its recovery from the Corona pandemic and virtually every business in New York City was afforded these concessions to help businesses stay alive. It was agreed to increase the rent security from $1,500 to $6,000 per store and Mr. Nazmiyal began paying rent in January 2023. He continued paying rent until approximately November 2023 when the Debtor obtained a TRO against Michael E. Crane. (Attached as Exhibit "K" and "L" are the security and rent receipts). At the same time the heat and hot water in the building was no longer

provided, this persisted for almost a year. 148 violations were registered with HPD. (Attached as Exhibit "M" are the violations). There is no superintendent, no trash collection and no building maintenance. Due to the litigation, uncertainty and lack of services at the stores, Mr. Nazmiyal began withholding the rent. No one contacted him to request the rent and no one showed any concern for his businesses. Although clients were seen by appointment only at Wristwatch Café, he could not open to the public nor apply for business licenses under these conditions.

## MICHAEL E. CRANE HAD APPARENT AUTHORITY TO SIGN THE LEASES

13. The Debtor repeatedly alleges that Michael E. Crane had no authority to sign any documents on its behalf, he alleges that these documents including leases are fraudulent, however this is entirely untrue. On January 25, 2021, Honorable David B. Cohen of the Supreme Court of New York signed a Stipulation and Order authorizing Michael E. Crane to sign documents, leases and even mortgages on behalf of the Debtor. (Attached as Exhibit "N" is the stipulation and order). In addition, it is interesting to note that Mr. Snyder writes in a Motion Of Debtor To Approve Settlement Agreements Between The Debtor And Defendants….on page 6, paragraph 22: *"The Haziza settlement is reasonable because the debtor shall receive all of the Haziza Arrears. Furthermore, since Haziza will no doubt argue that **Mr. Crane had apparent authority** to collect rents on behalf of the Debtor, the debtor is not certain it would be able to seek recovery from Haziza of the Haziza Rent previously collected by Mr. Crane from September, 2021 through November, 2023."* (Attached as Exhibit "O" is the motion). Mr. Snyder clearly admits hat Michael E. Crane did in fact have apparent authority.

## DEBTOR MAKES ERRONEOUS CITATIONS TO MISLEAD THE COURT

14. On October 16, 2024, Eric J. Snyder, Esq. filed a response to the Court in relation to a request for a TRO. He writes several unfounded claims and erroneously cites law in furtherance of his position, some of which is entirely untrue: (response attached as Exhibit "P")

   a) In paragraph 8 he writes, *"Under McKinney's Real Property Law 291, 291-C (McKinney's 2024), any lease in excess of three years must be recorded…"*
   This is entirely untrue. There is no requirement in the State of New York to record a lease or memoranda. In fact, I have seen a provision that this lease shall not be recorded on a number of occasions.
   He continues to write, "*In re Watts Contractors*, 360 B.R. 489, 491-492 (Bankr.E.D. Va. 2007) (unrecorded 20-year lease void under Virginia Law against debtor under 544(b)(3). This case does not apply in the instant matter as there is no requirement in the State of New York to record a lease or memoranda.

   b) In paragraph 11 he writes*: "That is surprising (but not really) because, according to the New York State Department Of State website, the registered agent (the "DOS Designation") for the Kosher Food Connection is…Michael Crane at the Real Property."*
   Again this is misleading. Mr. Nazmiyal simply used Mr. Crane's name to assist with Service of Process. Nothing indicates Mr. Crane is an owner or member of the LLC. If the Court scrutinizes the document carefully, it will read that the biennial statement indicating the proper contact information is past due for 'Entity Status" and "Statement Status". Once Mr. Nazmiyal filed his biennial statement, the current information has been reflected, which has nothing to do with Michael E. Crane. Permitting someone to

7

use your mailbox does not give a person control over another person's assets. (NY DOS designation attached as Exhibit "Q")

c) In paragraph 15 Mr. Snyder writes, *"The alleged Lease for the wristwatch Café contains a lease commencement date of July 15, 2021. However, as of September 2021, the commercial space allegedly occupied by Writwatch Café was still "raw", not built out. A picture of the space is annexed hereto.."*

The picture depicts the space of Kosher Food Connection which had already commenced renovation. A receipt from the builder dated, September 18, 2021, itemizes the demolition of the interior of the store in preparation for the build. This is consistent with the picture Mr. Snyder has annexed. (receipt attached as Exhibit "R")

d) In paragraph 16, Mr. Snyder writes, *"Furthermore, Nazmiyal specifically testified that he never wrote a check, rent or otherwise, to the Debtor. See reply, ECF #39. Ex. E, p.145, 1.12. While his declaration in support of the TRO Motion states he paid rent, including a Security deposit (Wristwatch Café Lease, paragraph 31) there is no evidence that those payments were ever made."*

I have spoken to Mr. Nazmiyal and he does not recall testifying to these statements. Attempting to find the documents that were cited to was unsuccessful, these exhibits do not appear to exist. Mr. Nazmiyal paid his rent and security in cash to Michael E. Crane, not the debtor. (receipts for the rent and security payments Wristwatch Café attached as Exhibit "K")

e) In paragraph 17 Mr. Snyder writes, *"The rent charged for this space to the previous tenant, the Body shop, equaled $3,300 a month. See Supp. Motion, ex. P. According to the newly found leases for the Stores, the rent is less than half that amount…"*

Firstly, it is baffling how the difference in rent from one tenant to the next invalidates a lease. Secondly, according to a Settlement Agreement, signed by Mr. Snyder on August 30, 2024, between the debtor and Eyal Haziza in apartment 3N, it was not only agreed that the rent would be $1,500, but the apartment would be registered as "Rent Stabilized". (agreement attached as Exhibit "S", page 2, paragraph 2). This rent is almost half his original rent for an apartment literally twice the size of Wristwatch Café. Even more shocking, is that this apartment is NOT "Rent Stabilized" and Haziza's original rent was $2,175. Recently discovered, is a Renewal Form For Apartments <u>Not Subject To The New York City Rent Stabilization Law</u> signed by Eyal Haziza himself on June 13, 2019 (See attached as Exhibit "T"). Despite the fraud being committed here, according to Mr. Snyder, simply lowering the rent from $2,175 to $1,500 (it was actually lowered to $1,300 according to subsequent filings) reducing Mr. Haziza's rent to nearly half should invalidate his lease as well.

### **THE SALE SHOULD NOT BE CONFIRMED BECAUSE IT IS NOT IN THE BEST INTERESTS OF THE DEBTOR ESTATE**

15. The purpose of the Bankruptcy Law is to maximize the benefit to the Debtor Estate, not necessarily to the mortgagee. 11 USC §1127(a) permits the Court to modify a plan at any time before confirmation. On December 17, 2024, there was a Bankruptcy Auction held for the sale of the mixed use building located at 250 E 90th Street, New York, NY. The successful bidder was Tristar Management Associates, LLC for the sum of $4,400,000 and the Back-Up Bidder is Kenden, LLC in the amount of $4,350,000. (notice of result of auction attached as Exhibit "U").

16. However, it is not in the best interests of the Debtor Estate to confirm Tristar's bid, but rather the plan should be modified to confirm Kenden instead. According to the bid sale procedures, Kenden as "stalking horse" needs to pay $50,000 to the broker and $152,500 to counsel, totaling approximately $202,500. The "stalking horse" bid by Kenden is $3,500,000, thus they were prepared to accept $3,297,500 as payment in full for the mortgage. At their bid of $4,350,000 this would net the Debtor Estate over $1,000,000.

17. Conversely, if this court is to confirm Tristar's bid of $4,400,000 then the broker fee is 4.75% or $209,000 and counsel receives almost $300,000. In this scenario Kenden is owed $4,063,832 which would net the Debtor Estate $0.00. Even if Kenden argues for their full sum, the mere difference of $50,000 between the 2 bids will always make Kenden the better choice to maximize the benefit to the Debtor Estate. In this scenario, their bid of $4,350,000 would be reduced to $4,150,000 after broker and counsel fees which then would reduce to $86,168 going to the Debtor Estate.

18. Even more compelling is to modify the plan and to confirm the sale of the building to Benjamin Nazmiyal who was in contract for 3 years to purchase the property for $3,600,000, Kenden was owed approximately $3,300,000 and there was no realtor or counsel fees. On July 31, 2024, Mr. Nazmiyal signed a declaration with an offer for $4,200,000, but the Debtor simply ignored him. (See declaration attached as Exhibit "V", page 2, paragraph 4). Mr. Snyder is working feverishly to attempt to invalidate the store leases so that Benjamin Nazmiyal receives nothing. He already prevented Mr. Nazmiyal from consummating the contract to purchase the building, this his $100,000 deposit is gone. The decision of this Court as to who shall purchase the building are perfectly acceptable and within the law.

19. However, an order of the sale of the building to Benjamin Nazmiyal for $4,200,000 and not give the broker or Mr. Snyder anything would be just since is ok for Mr. Nazmiyal to walk away with nothing. To maximize the benefit to the Debtor Estate, the broker and counsel should receive nothing, this bankruptcy in its entirety was not necessary. The $4,200,000 purchase price would pay Kenden $4,063,832 and net the Debtor Estate $136,168. It is simply unfair and unjust to expect Benjamin Nazmiyal to lose a $100,000 deposit and possibly $500,000 in building the stores, not to mention involving 4 years of his life in these ventures. But a broker should receive $50,000 to $200,000 for 6 weeks of work and counsel $150,000 to $300,000 for 9 months of work. This does not net the maximum benefit to the Debtor Estate.

### THE SALE SHOULD NOT BE CONFIRMED BECAUSE TENANT SAN MATTEO HAS A VALID LEASE

20. The Leases for the tenant San Matteo Pizzeria has been recently discovered and turned over to Debtor's counsel. (leases attached as Exhibit "W") Although the business may have voluntarily moved to another building across the street, it does not relieve them of their obligations under their lease, specifically rent due and owing of approximately $250,000. On May 22, 2024, Eric J. Snyder, Esq. sent an email in which he writes, "1(f) San Matteo moved out months ago and he knows that. Please confirm that he is not receiving payments." (email attached as Exhibit "X"). This is untrue, although they opened a new store, they refused to relinquish the store in the building at 250 E 90th Street, and used it for storage. Mr. Snyder asks if anyone is "RECEIVING" payments which would not occur if they were not occupying the space.

21. It is imperative before the confirmation of sale to ensure that the commercial space has been legally vacated. It is important for the court to investigate if there is a surrender agreement in place. San Matteo was not mentioned in the adversarial action. On November 20, 2024, Mr. Snyder filed A Statement Of Debtor In Support Of Letter And In Response To Memorandum Endorsed Order. (statement attached as Exhibit "Y") In his exhibit A he provides locksmith bills from September 18, 2024, it indicates the Pizzeria and Espresso Bar. If the tenant vacated months before May 22, 2024, it is not conceivable that the Debtor waited over 5 months to change the locks and secure the store. The Court on behalf of the Debtor Estate should make an inquiry and verify that this space has been legally vacated before confirming the sale. Any surrender agreements, concessions or evictions should be transparent and filed with the Court.

## **THE SALE SHOULD NOT BE CONFIRMED BECAUSE THE DEBTOR HAS UNCLEAN HANDS**

22. Debtor's Counsel, Mr. Eric J. Snyder, Esq. continually maligns and defames Defendant, Michael E. Crane with no basis whatsoever. He enjoys calling Mr. Crane a fraud, he claims Mr. Crane has been found guilty of writing faulty leases, but none of this is true. There has been absolutely no evidence of this whatsoever, his comments bare no veracity and the Court should make a note of this disingenuous behavior when searching for credibility. For instance, in the background of many of the motions it appears, "The Fraudulent Sale Contract". The Court did not find anything erroneous in the contract for sale signed by Benjamin Nazmiyal and Michael E. Crane on behalf of the Debtor. In fact, one of the reasons for filing this bankruptcy was to stay the proceeding in which Mr.

Nazmiyal was suing for specific performance of that contract. In the declaration of David M. Repetto filed on April 2, 2024 supporting the bankruptcy, he writes in paragraph 54: *"In order to prevent the foreclosure of the Real Property and to enforce the numerous orders of the Courts in New York and New Jersey, the Debtor sought Chapter 11 relief in this court."* If the Sale Contract was truly fake, it would not have been necessary to file bankruptcy as a desperate attempt to maintain control of the asset, it would have been evident in the court proceedings. There is nothing fraudulent about this contract. (declaration attached as Exhibit "Z")

23. Additionally, on August 13, 2024 Eric J. Snyder issued a subpoena to JPMorgan Chase Bank, N.A. and acquired nearly 400 pages of confidential banking records for the accounts of Michael E. Crane. Mr. Snyder failed to serve Mr. Crane with a copy of the subpoena in blatant violation of FRCP 45, denying Mr. Crane his rights under the law. Mr. Snyder even admits it in an email on November 18, 2024 when asked by opposing counsel, "Hadn't seen this in the file. Did you send a copy to John when you served it? [Mr. Snyder replies, Andrew: No. I'm sending it now. –Eric]. This is entirely unacceptable and the Court is asked to take appropriate action by ordering these documents destroyed and issuing sanctions to Mr. Snyder. (See subpoena, Declaration of JPMorgan Chase Bank, N.A., FRCP 45 and Email attached as Exhibit "AA")

24. On June 26, 2025, without a court order, the Debtor hired a locksmith to change the locks on Benjamin Nazmiyal's stores Wristwatch Café and Kosher Food Connection. Unfortunately, Eric J. Snyder, Esq. endorsed this behavior which is unequivocally illegal. We asked the court to intervene, but to our dismay this Honorable Court refused to rule on the matter. This brazen behavior in the face of the law must be examined

immediately. Mr. Nazmiyal has suffered extensively including over $300,000 of missing merchandise. The court has maintained jurisdiction over each and every incident involving Treasures & Gems LTD, this actions should be no different, sanctions should be issued, and the merchandise recovered and/or compensated for. Mr. Nazmiyal and Mr. Crane believe that if the judge had intervened earlier then the second "lockout" performed on September 18, 2024, might very well have been prevented. Once again, the court is being asked to please address and admonish this destructive, illegal behavior. Andrew Gottesman, Esq. prior counsel for Wristwatch Café and Kosher Food Connection had submitted a written response to this matter, but unfortunately it fell on deaf ears. (See response of Andrew Gottesman, Esq. attached as Exhibit "BB")

25. In sum, the Debtor, and specifically Debtor's counsel, Eric J. Snyder, Esq. is a fiduciary of the Court and is under an obligation, like everyone else, to simply follow the law. Several times during these bankruptcy proceedings this Honorable Court has been quite on the issues raised by Michael E. Crane and Benjamin Nazmiyal. The Court has denied their motions and turned its head when confronted with abuses by the attorneys involved in this case. Subpoenas without notice, illegal "lockouts" and false affidavits has not been addressed by this Court, thus denying someone their due process. It is with great hope that the Honorable Judge Jones carefully scrutinizes the sale of this asset.

26. It is respectfully requested that this Court balance your final decisions and confirmation of sale by assessing the maximum benefit for the Debtor Estate. Additionally, it is respectfully requested that this Court modifies the confirmation plan justly and to limit the damages caused to everyone involved.

I affirm this 14th day of January, 2025, under the penalties of perjury under the laws of New York which may include a fine or imprisonment that the foregoing is true, and I undertand that this document may be filed in an action or proceeding in a court of law.

/s/ Michael Crane

MICHAEL E. CRANE

I affirm this 14th day of January, 2025, under the penalties of perjury under the laws of New York which may include a fine or imprisonment that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

/s/ Benjamin Nazmiyal

BENJAMIN NAZMIYAL
